

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00384-CR

Leticia Z. **MENDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 2025CC001863
Honorable Melissa Saenz, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
Velia J. Meza, Justice

Delivered and Filed: August 5, 2026

AFFIRMED

A jury convicted appellant Leticia Z. Mendez of one count of assault, and the trial court sentenced her to six months of probation. In four issues, Mendez asserts: (1) her due process rights were violated because the State relied on false testimony; (2) time limits on jury selection rendered her counsel ineffective; (3) the trial court erred by entering inadmissible hearsay; and (4) the alleged inadmissible hearsay violated her right to confrontation of witnesses. We affirm.

## I. BACKGROUND

On January 20, 2025, Mendez was arrested for assaulting her neighbor, Orfa Trevino, by striking Trevino's hand with a hammer.

At the start of jury selection, the trial court announced that each side would receive thirty minutes to conduct voir dire. The State conducted its examination within the allotted time. When the trial court informed Mendez's counsel that their thirty minutes had elapsed, counsel requested "one or two more minutes." The trial court granted the request. When those two minutes expired, the trial court called time and counsel responded, "all right, Judge."

The jury was removed from the courtroom so that the attorneys could exercise their strikes. Mendez asked the trial court to call in venireperson fifteen for further questioning because she did not complete the juror form. The trial court denied the request because Mendez did not ask venireperson fifteen about the blank form; Mendez responded that she failed to ask because she ran out of time, and the only response venireperson fifteen gave related to the challenge was that she had a doctor's appointment. The parties then individually questioned venirepersons two, three, ten, and twelve. After individual questioning, the State challenged venireperson three for cause because she had a hard time understanding English. Mendez's counsel objected on the grounds that her testimony indicated she could be fair and understand what was being asked. The trial court overruled Mendez's objection and excluded venireperson three. Mendez's counsel then requested an additional strike in light of venireperson three being removed, arguing the State received four rather than three strikes. The trial court denied the request.

After the parties conferred and signed off on jury selection, Mendez's counsel objected to the time constraint, arguing she rendered ineffective assistance of counsel because she did not have enough time to properly question venirepersons four and fifteen, whom she struck, or venireperson

sixteen, who served on the jury. Mendez's counsel requested additional strikes. The trial court noted the objection and denied the request.

At trial, the State called two witnesses: Trevino and Officer Brianne Flores. Mendez called one witness: her daughter, Miriam Mendez.

Trevino testified that she and Mendez were neighbors, and she replaced the wire fence that separated their properties with a wooden privacy fence. On January 20, 2025, Trevino observed Mendez using a hammer to remove wooden panels from the new privacy fence because it blocked the entrance to her water heater shed. After calling law enforcement, Trevino used her cellphone to record Mendez removing the wooden panels. The five second video captures Mendez working with a hammer to remove the panels. The last image on the video is Mendez holding the hammer with both hands, angling the hammer toward Trevino. Trevino testified that Mendez "got upset and swung the hammer," causing the video to end abruptly because Trevino dropped the phone when Mendez struck her hand. The alleged strike was not recorded. Trevino also testified that, in preparation for construction, she received permission from neighbors to cross property lines during construction of the fence. Mendez objected to the statement as backdoor hearsay and to lack of confrontation since the other neighbors were not witnesses. The trial court overruled the objection.

Officer Flores testified that she was dispatched to Trevino's home and interviewed both Trevino and Mendez. Officer Flores asked Mendez if she hit Trevino, to which Mendez responded that she "pushed [Trevino] with a hammer." Trevino showed Officer Flores the video she recorded on her cellphone. Shortly thereafter, Officer Flores arrested Mendez.

Prior to trial, the State provided Mendez with a *Brady* disclosure memorandum that memorialized a meeting between Trevino and the State's victim's advocate, Vickie Lopez. The *Brady* disclosure reflected that Trevino told Lopez that Mendez's daughters gave her permission

to build the fence over the property line. On cross-examination, Trevino recalled speaking to individuals from the District Attorney's Office but did not recall speaking to victim advocate Lopez, and that the office may have misunderstood what she told them. Trevino testified that she told the District Attorney's Office that she requested permission to cross the line during construction, not permission to build a fence over the property line.

At a hearing outside the presence of the jury, Mendez argued the inconsistencies between the *Brady* disclosure and Trevino's testimony would leave a false impression on the jury as to whether she met with victim advocate Lopez or received permission from Mendez to build the fence. Mendez further argued that the State had a duty to correct the alleged inconsistencies in Trevino's testimony. The State countered that most of Trevino's testimony was consistent with the disclosure, did not amount to lying, and the facts related to building the fence were not relevant to assault. The trial court allowed the trial to continue and left it up to the jury to assess Trevino's credibility.

The jury found Mendez guilty of assault and the Court sentenced her to six months of probation.

Mendez then filed a motion for new trial, asserting that the State violated her right to due process by "allow[ing] false testimony from the complaining witness to go uncorrected…" and that her "trial counsel was rendered ineffective by time constraints on voir dire, thereby depriving her of effective assistance of counsel." After a hearing, the trial court denied the motion. Mendez timely appealed.

## II. Due Process

In her first issue, Mendez contends the State violated her due process rights by presenting false or misleading testimony from Trevino.

**A. Standard of Review and Applicable Law**

"The use of material false testimony to procure a conviction violates a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution." *Ukwuachu v. State*, 613 S.W.3d 149, 156 (Tex. Crim. App. 2020) (citing *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015)). In reviewing a claim alleging the use of material false testimony, we must determine whether: (1) the testimony was actually false, and (2) whether it was material. *Id*. (citing *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014)). "To establish falsity, the record must contain some credible evidence that clearly undermines the evidence adduced at trial, thereby demonstrating that the challenged testimony was, in fact, false." *Ex parte Reed*, 670 S.W.3d 689, 767 (Tex. Crim. App. 2023) (citing *Ukwuachu*, 613 S.W.3d at 156).

"Whether evidence is false turns on whether the jury was left with a misleading or false impression after considering the evidence in its entirety." *Ex parte Chaney*, 563 S.W.3d 239, 263 (Tex. Crim. App. 2018) (citing *Ex parte Weinstein*, 421 S.W.3d at 665–66). False testimony is material if there is a reasonable likelihood that it could have affected the jury's judgment. *Ex parte Reed*, 670 S.W.3d at 767 (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Ex parte Chavez*, 371 S.W.3d 200, 206–07 (Tex. Crim. App. 2012)).

**B. Analysis**

Mendez argues Trevino's testimony was false because it was inconsistent with the *Brady* disclosure, and as a result, "the jury was unable to accurately judge Trevino's credibility because the state allowed her testimony to go uncorrected." Inconsistencies in testimony do not demonstrate falsity but instead go to the weight and credibility of the evidence for the jury to decide. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (holding, in case

involving contradictory testimonial evidence, that it was for jury to determine whether two witnesses were lying or telling truth); *see also* Tex. Code Crim. Proc. Ann. art. 038.04 ("The jury, in all cases, is the exclusive judge of the facts proved and of the weight to be given to the testimony . . . .").

Furthermore, any false impression is immaterial because Mendez cross-examined Trevino about whether she received permission to replace the wire fence, what she told the District Attorney's office, and whether she spoke to victim advocate Lopez. The record contains video evidence of Mendez removing the wooden panels and events immediately preceding the alleged assault, Trevino's testimony that Mendez struck her with the hammer, and a photo of Trevino's hand after the alleged assault.

The record contains no credible evidence that clearly undermines Trevino's testimony as actually false; the *Brady* memorandum discrepancy was explored on cross and attributed by Trevino to a misunderstanding about crossing property lines during construction, which goes to weight. Therefore, Mendez failed to show how any discrepancy in Trevino's testimony was false or material. *See Valdez v. State*, No. AP-77,042, 2018 WL 3046403, at *9 (Tex. Crim. App. June 20, 2018) (not designated for publication) (finding any false impression was not material because defense counsel effectively cross-examined the witness about the inconsistencies in her statements and the evidence of guilt was overwhelming).

Accordingly, we overrule Mendez's first issue.

### III. Restriction of Voir Dire

In her second issue, Mendez argues the trial court abused its discretion by limiting her counsel's time to conduct voir dire, preventing her counsel from exercising her peremptory challenges intelligently.

**A. Standard of Review and Applicable Law**

We review a trial court's decision to limit voir dire questioning for abuse of discretion. *Ganther v. State*, 848 S.W.2d 881 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Absent abuse of discretion, we will not reverse the trial court's refusal to allow defense counsel additional voir dire time. *Smiley v. State,* 129 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

"The constitutionally guaranteed right to counsel encompasses the right to question prospective jurors in order to intelligently and effectually exercise peremptory challenges and challenges for cause during the jury selection process." *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990) (en banc). This right must be balanced with the trial court's broad discretion over the process of selecting a jury, including imposing reasonable time limitations on the amount of time each party can question the jury panel. *Ratliff v. State*, 690 S.W.2d 597, 599 (Tex. Crim. App. 1985) (en banc).

"To preserve error concerning the manner of voir dire, appellant must point to a question the trial court did not allow the panel to answer." *Cordova v. State*, 296 S.W.3d 302, 307 (Tex. App.—Amarillo 2009, pet. ref'd).

**B. Analysis**

Mendez argues that, had she not run out of time, she would have further questioned venirepersons four, five, fifteen, and sixteen. Turning to the record, the trial court gave Mendez's counsel a two minute warning, and when that time was up, Mendez requested an additional two minutes, which the trial court gave her. Mendez's counsel did not object, nor did she indicate that she needed additional time to ask specific questions.

Although Mendez's counsel later objected that she was rendered ineffective due to the time constraint, she did so after the parties had conferred and signed off on a jury list. Furthermore, Mendez's counsel did not inform the trial court of the specific questions she wished to ask if given additional time. Because counsel neither objected before time expired nor proffered specific questions she was prevented from asking — and raised her objection after signing off on the jury, Mendez failed to preserve this issue. *See Clemments v. State*, 940 S.W.2d 207, 209 (Tex. App.—San Antonio 1996, pet. ref'd) ("it is essential that the record reflect what questions the complaining party was prevented from asking"); *S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding that the appellant did not preserve error because "[r]ather than propound specific questions that he wished to ask, appellant merely identified general topics for potential questions").

Therefore, we overrule Mendez's second issue.

## IV. Hearsay

In her third issue, Mendez alleges the trial court committed reversible error in admitting hearsay through Trevino's testimony that she received permission from her neighbors to build the wooden fence. The State contends that any error by the trial court in admitting the testimony was harmless.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024). A trial court does not abuse its discretion unless the decision "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). A statement not offered to prove the truth of the matter, but offered for some other reason, is not hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999).

The erroneous admission of a hearsay statement constitutes non-constitutional error subject to a harm analysis, and it must be disregarded unless the error affected a substantial right of the defendant. TEX. R. APP. P. 44.2(b); *Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Johnson v. State,* 43 S.W.3d 1, 4 (Tex. Crim. App. 2001)). "A substantial right is affected when the error had a substantial and injurious effect in determining the verdict." *Campos*, 317 S.W.3d at 779 (citing *Johnson,* 43 S.W.3d at 4). However, if, after examining the record as a whole, we have fair assurance that the error had no influence or only had a slight effect, the conviction will stand. *Id.* "In considering the likelihood that the error adversely affected the jury's verdict, appellate courts should consider everything in the record, including the evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered with other evidence in the case." *Eggert v. State*, 395 S.W.3d 240, 244 (Tex. App.—San Antonio 2012, no pet.) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

**B. Analysis**

Mendez contends Trevino's statement in response to the State's question on what preparations she made prior to building the fence was backdoor hearsay. Specifically, Mendez argues Trevino's statement "We had gotten permission from — we had informed neighbors and gotten permission from neighbors to be able to work on our fence[,]" bolstered Trevino's

credibility and "was important because a major fact in contention was that Trevino had not received permission from Mendez to build any part of the fence on Mendez's property."

The State elicited the statement for the purpose of explaining what preparations Trevino made prior to building the fence, and the court admitted it for the purpose of explaining her conduct. It was not offered to prove the truth that any neighbor — including Mendez — gave Trevino permission to build a fence over a property line. Accordingly, Trevino's statement does not constitute hearsay. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) ("An extrajudicial statement or writing which is offered for the purpose of showing what was said rather than for the *truth* of the matter stated therein does not constitute hearsay.").

Even if Trevino's statement was inadmissible hearsay, from our review of the record, we cannot conclude Mendez suffered harm. *See Campos*, 317 S.W.3d at 779 (citing *Johnson,* 43 S.W.3d at 4). Accordingly, the trial court did not abuse its discretion in overruling Mendez's hearsay objection to the statement.

Therefore, we overrule Mendez's third issue.

### V. Confrontation

In her fourth issue, Mendez argues that admission of the alleged hearsay violated her right to confrontation because the neighbors were not witnesses. The Confrontation Clause applies only to testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 821 (2006); *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). "[A]n out-of-court statement, even one that falls within [the] definition of 'testimonial' statements, is not objectionable under the Confrontation Clause to the extent that it is offered for some evidentiary purpose other than the truth of the matter asserted." *Langham*, 305 S.W.3d at 576.

- 10 -

Because we found Trevino's statement was properly offered and admitted for a non-hearsay purpose, Mendez's right of confrontation was not implicated. *See Del Carmen Hernandez v. State*, 273 S.W.3d 685, 689 (Tex. Crim. App. 2008) (concluding statement, as non-hearsay, did not implicate right of confrontation). Accordingly, we cannot conclude the trial court erred by admitting this statement over Mendez's objection.

Therefore, we overrule issue four.

## VI. CONCLUSION

We overrule all issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH